FILED
AUG 4 1998
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
ENTERED
AUG 4 1998

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FANT INDUSTRIES, INC., )
et al., )
 )
    Plaintiffs, )
 )
vs. ) CIVIL ACTION NUMBER
 )
HEI, INC., et al., ) 98-C-0757-S
 )
    Defendants. )

**MEMORANDUM OF OPINION DENYING THE DEFENDANTS' MOTION
TO ALTERNATIVELY DISMISS OR TO TRANSFER, AND GRANTING
PLAINTIFFS' MOTION FOR AN INJUNCTION**

This is an action arising out of a hostile takeover attempt.

The plaintiffs, Fant Industries, Inc. and Anthony Fant seek a declaratory judgment that their Tender Offer for the purchase of additional stock of the defendant HEI, Inc. complies with the securities laws. With equal fervor, the plaintiffs seek damages from the defendants for (1) alleged tortious interference with their business relationships; (2) alleged violation of the Securities Exchange Act of 1934, 15 U.S.C. § 78 et seq.; (3) defamation/libel/slander; (4) alleged negligence and wantonness; and (5) alleged conspiracy.

Fant Industries is a Delaware corporation with its principal place of business in Birmingham, Alabama. Anthony J.

Fant, its President, is domiciled in Birmingham, Alabama. HEI, Inc. ("HEI") is a Minnesota corporation with it principal place of business in Minneapolis. The individual defendants Robert L. Brueck, Eugene W. Courtney, William R. Franta, and Frederick M. Zimmerman are members of HEI's Board of Directors. Except for the defendant Brueck, who lives and works in Texas and Idaho, the individual defendants are domiciled in Minnesota.

The defendants have moved to dismiss the complaint based on alleged improper venue. In the alternative, they have moved to transfer the action to the Minnesota federal district court, pursuant to 28 U.S.C. § 1404(a).[1]

After the filing of this action, HEI filed an action against the Fants in the Minnesota federal district court, alleging that the Fants violated the Securities and Exchange Act of 1934 and certain regulations promulgated thereunder by making a misleading proxy tender offer and proxy solicitation. The Fants have moved to enjoin that action, based on the "first filed" doctrine. *Merrill Lynch, Pierce, Fenner & Smith v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982); *Mutual Sav. Cas. Ins. Co. v. Frit Indus. Inc.*, 805 F. Supp. 919, 925, n. 5 (M.D. Ala. 1992), *aff'd*, 3 F.3d 442 (11th Cir. 1993).

---

[1] For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Based on the opinion which follows, the defendants' motion will be denied. The plaintiffs' motion will be granted.

I

HEI specializes in the design and manufacture of ultraminiature microelectronic devices and the high technology products incorporating those devices. Its only facility is in Minnesota. It has no offices, facilities, property, or employees in Alabama. The individual defendants, other members of the Board of Directors, and executive officers of HEI, in the aggregate, own less than five percent (5%) of HEI's outstanding stock. Nearly half (44%) of HEI's stockholders reside in states other than Minnesota. At least eight of HEI's shareholders are Alabama residents.

In addition to the parties, HEI's witnesses will include representatives of Minneapolis-based R. J. Steichen & Company, one of the Fants' financial advisors; representatives of Minneapolis-based Padilla Speer Beradsley, Inc., the Fants' public relations consultant for the Tender Offer; HEI's corporate counsel, and presumably certain shareholders.

Many, if not most of the documents relating to the securities claims are located in Minnesota.

The Fants collectively own eighteen percent (18%) of HEI's stock. They purchased virtually all (95%) of their stock

through J. C. Bradford & Company, an investment firm located in Birmingham, Alabama. The funds used to purchase the stock were drawn from an account at AmSouth, a bank headquartered in Birmingham.

Birmingham is the residence of many of the witnesses expected to be called by the Fants at trial. These include Howard Miles, who will testify about the background and preparation of the Tender Offer; Art Malone and Eliza McKewen of J.C. Bradford & Company, who assisted in the purchase of the HEI stock; and some of the proposed new members of the Board of Directors. Nashville employees of J.C. Bradford & Company who assisted in the valuation of HEI and the stock purchase, live much closer to Birmingham than Minneapolis. All of the Fants' witnesses on the defamation claims live in Alabama.

Birmingham is the depository of many of the evidentiary documents expected to be used by the Fants at trial. For example, all of the documents relating to the Tender Officer are in Birmingham.

On February 17, 1998, Anthony Fant filed a Schedule 13D with the Securities and Exchange Commission ("SEC") indicating his intention to gain control of HEI's board of Directors. On March 10, 1998, the Fants made a formal Tender Offer to HEI shareholders. On March 20, 1998, HEI and its Board of Directors wrote a letter to

HEI shareholders which, in the Fants' view, accused the Fants of fraud and violation of the securities laws. The letter was sent to all HEI shareholders, including those in Alabama. On the same day, the defendants filed a Schedule 14D-9 with the SEC in Washington, D.C. and hand delivered a copy to Anthony Fant in Birmingham. In the Fants' view, the Schedule 14D-9 contained the same false and misleading statements as those in the letter.

This action was commenced on March 27, 1998. HEI was served with the complaint on April 3.

On April 20, 1998, HEI filed an action against the Fants in the United States District Court for the District of Minnesota. The causes of action in the Minnesota case arise out of the same series of transactions as the Fants' securities claims in this case. Put another way, based on a common nucleus of operative facts, HEI seeks in the Minnesota action relief precisely opposite that sought by the Fants in their declaratory judgment claim in this court.

II

In a case brought under the 1934 Securities Exchange Act, the proper venue is a district where the defendant is found, is an inhabitant, or transacts business. Venue is also proper in a district "wherein any act or omission constituting the violation occurred." 15 U.S.C. § 78aa ("Section 27"). The act or transaction

contemplated by Section 27 need not be crucial, but it must be of material importance to the consummation of the scheme. *Hilgeman v. Nat'l Ins. Co.*, 547 F.2d 298, 302 n. 11 (5th Cir. 1977). In this circuit, "any use of instrumentalities of the mails or other interstate facilities made within the forum district constituting an important step in the execution of the fraudulent, deceitful scheme or in its consummation is sufficient" to confer venue in the district. *Hooper v. Mountain States Secs. Corp.*, 282 F.2d 195, 204 (5th Cir. 1960). *Hilgeman, supra*, found proper venue in the Northern District of Alabama where the only "acts" consisted of sending premium notices into the district, and receiving premium payment checks drawn on a bank in the district. *Id.*, at 301. *S.E.C. v. Carriba Air, Inc.*, 681 F.2d 1318 (11th Cir. 1982), held that proper venue was established by the mere filing of an SEC statement in the Northern District of Georgia.

In this case, HEI has mailed several statements into the Northern District of Alabama. The allegedly false and misleading Tender Offer documents were prepared, at least in part, in the Northern District of Alabama. And the statements which form the basis of the Fants' state law claims were mailed into Alabama by HEI. The Fants purchased much of their HEI stock from accounts drawn on an Alabama bank.

6

On consideration of all of the relevant facts, the court concludes that venue of this action in this court is proper.

Obviously, venue of the state law claims lies in the Northern District of Alabama.

III. Section 1404(a) Transfer

The defendants have the heavy burden of establishing that convenience and justice militate in favor of transferring this action to the District of Minnesota. Ordinarily, the plaintiffs' choice of forum should not be disturbed unless it is "clearly outweighed by other considerations." *Robinson v. Giamarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1966). Even more deference is afforded to the plaintiffs' choice where, as here, the chosen forum is also the residence of the plaintiffs. *In re Rocoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).

In determining the propriety of transfer, two considerations guide the court's exercise of its discretion: (1) the private interests of the parties, including the convenience of the witnesses and parties, and (2) the public interest in the administration of justice. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *Stewart Org., Inc. v. Rocoh Corp.*, 487 U.S. 22, 29 (1988). In *Gulf Oil*, the Supreme Court noted:

> An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof, availability of compulsory process for the attendance of unwilling, and the cost of obtaining the attendance of willing, witnesses;***and all other practical problems that make trial of a case easy, expedient and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial....But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.
>
> Factors of public interest also have place in applying the doctrine.***Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation....There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

A motion to transfer should be denied if the proposed transfer would "merely shift[] the inconvenience of litigating in a given forum from one party to the other." *U.S. v. $633,021.67 in U.S. Currency*, 842 F. Supp. 522, 535 (N.D. Ga. 1993).

Although a substantial number of prospective non-party witnesses reside in Alabama, the court presumes that in terms of sheer numbers, a majority of such prospective witnesses reside in Minnesota. However, most of these are HEI agents/employees, so that it should encounter no difficulty in obtaining discovery from

them. A solid majority of the stockholders live in Minnesota; but discovery will not likely be sought from most of them and very few of them will likely be called as trial witnesses.

If the case is transferred to Minnesota, the Fants will lack compulsory process to compel the attendance at trial of all of their non-party Alabama witnesses. On the other hand, should it remain here in Alabama, HEI will lack compulsory processes to force the attendance of its Minnesota witnesses at trial.

As noted earlier, the documents are physically located both in Minnesota and in Alabama, with more in Minnesota than in Alabama. The Fants do not complain of any inconvenience in inspecting, copying, and transporting HEI documents to the Northern District of Alabama. Selection of either forum will not enhance ease of access to the documents.

Federal law governs all of the defendants' claims, and that law is presumably the same in Minnesota as it is in Alabama. But under applicable choice of law principles, Alabama state law governs five of the six claims of the plaintiffs.

On consideration of all of the relevant matters, the court finds and concludes that in terms of the convenience of the witnesses, the balance tips in favor of transfer. There is a relative equilibrium with respect to the documents. However, considerations of compulsory process for the attendance of

witnesses at trial and choice of law tilt decidedly in favor of retaining the case here in the Northern District of Alabama.

Accordingly, HEI has not carried its heavy burden of showing that the case should be transferred for the convenience of the parties and witnesses and in the interest of justice.

IV

Having concluded that proper venue lies in this court, and that the case should not be transferred to the District of Minnesota pursuant to 28 U.S.C. § 1404(a), it follows that the court should enjoin HEI's lawsuit in the latter court.

The law is settled that "when two competing lawsuits are filed in different federal courts, a first-filed rule usually applies." *Mutual Serv. Cas. Ins. Co. V. Frit Inds. Inc.*, 805 F.Supp. 919, 925 n. 5 (M.D. Ala); *aff'd* 3 F.3d 442 (11th Cir. 1993). Under the first-filed rule:

> When a case is brought in one federal court, and the case so brought embraces essentially the same transactions as those in a case pending in another federal court, the latter court may enjoin the suitor from taking any further action in the prosecution of that case. This necessarily follows from a basic proposition that the first court to obtain jurisdiction over the parties and of the issues should have priority over a second court to do so.

*Roth v. Bank of Commonwealth*, 583 F.2d 527, 538 (6th Cir. 1978).

See *National Equipment Rental, Ltd. v. Fowler*, 287 F.2d 43, 45 (2d Cir. 1961).

HEI's argument is well-taken that improper venue or a viable § 1404(a) motion trumps any consideration of the first-filed rule. But here, the court has concluded that the § 1404(a) motion should be denied, and that venue is proper in this district. HEI has not identified any additional relevant factor which would justify abrogation of the "first-filed" rule, and the court cannot fathom one.

By separate orders, the defendant's Motion to Dismiss or Alternatively For Change of Venue will be denied. The plaintiffs' motion to enjoin the Minnesota case will be granted.

DONE this **3d** day of **August**, 1998.

_____
UNITED STATES DISTRICT JUDGE
U. W. CLEMON